## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MAURICE PEPPERS,           *

Plaintiff           *

v           *      Civil Action No. PWG-19-2346

MOHAMMED MOUBAREK,    *
JOHN DOE,
           *

Defendants
           ***

## MEMORANDUM OPINION

Plaintiff Maurice Peppers, an inmate at Federal Correctional Institution-Cumberland ("FCI Cumberland") initiated this action by filing a verified complaint pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), claiming that he is receiving inadequate medical care, his medical records have been lost or changed, and that by failing to provide a wheelchair for him, Defendants have violated the Rehabilitation Act, 29 U.S.C. §§ 794 *et seq.* and the Americans with Disabilities Act, 42 U.S.C. §§ 12131 *et seq.* ECF No. 1. Plaintiff names FCI-Cumberland Clinical Director Mohammed Moubarek and John Doe as defendants. This Memorandum Opinion discusses the following pending motions:

1. Peppers' Motion for Leave to Proceed in Forma Pauperis. ECF No. 2.

2. Peppers' Motion to Seal, which includes a request for appointment of counsel. ECF No. 10.

3. Defendants' Motions to Seal Medical Records. ECF Nos. 17, 18.

4. Peppers' "Motion for Service of Court Documents on Defendants by the U.S. Marshal Service Pursuant to Fed.R.Civ. P. 4(c)(3)." ECF No. 12.

5. Peppers' Motion for Judicial Notice. ECF No. 13.

6. Peppers' Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction to compel Defendants to provide him "medically appropriate pain relief" and total left knee replacement surgery, along with a later filed supplement. ECF Nos. 6, 14. Defendants filed a Response in Opposition. ECF No. 19.

A hearing on these motions is not necessary. *See* Loc. R. 105.6. For the reasons discussed below, Peppers' Motion for Leave to Proceed in Forma Pauperis is granted. Peppers' other motions are denied. Defendants' Motions to Seal Medical Records are granted.

## 1. Peppers' Motion for Leave to Proceed in Forma Pauperis

The verified inmate account statement (ECF No. 9), filed by the finance officer at FCI-Cumberland pursuant to Court Order, shows Peppers is indigent but does not provide the information needed (six-month average account balance and monthly deposits) to assess the initial partial filing fee under 28 U.S.C. § 1915. The Motion for Leave to Proceed in Forma Pauperis (ECF No. 2) will be granted, the initial partial filing fee will not be assessed, and payments shall be made toward the $350 filing fee in accordance with 28 U.S.C. § 1915.

## 2. Peppers' Motion to Seal and Request for Counsel

Local Rule 105.11 governs the sealing of all documents filed in the record and states in relevant part that "[a]ny motion seeking the sealing of pleadings, motions, exhibits or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." Local Rule 105.11 (D. Md. 2018). The rule balances the public's general right to inspect and copy judicial records and documents, *see Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978), with competing interests that sometimes outweigh the public's right, *see In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984). The

proponent of sealing such documents must "articulate a compelling interest that outweighs the strong presumption of public access." *Doe v. Pub. Citizen*, 749 F.3d 246, 272 (4th Cir. 2014). "[S]ensitive medical or personal identification information may be sealed," although not where "the scope of [the] request is too broad." *Rock v. McHugh*, 819 F. Supp. 2d 456, 475 (D. Md. 2011).

In his Motion to Seal Documents (ECF No. 10), Peppers asks to seal his "Ex Parte Emergency Motion for Limited Expedited Discovery and Appointment of Counsel" because the contents of the motion reflect his "anticipated strategy." *Id.* Peppers explains that since filing his Motion for a Preliminary Injunctive Relief (ECF No. 6), he has tried to obtain a copy of the medical records pertaining to pain medication prescribed for him by orthopedist, Dr. Hahn. ECF No. 11 at 2–4. Peppers suggests that portions of his medical records may have been "amended and may have been destroyed." *Id.* at 5. Based on this supposition, Plaintiff asks for expedited discovery, an opportunity to depose witnesses, and appointment of counsel. Peppers' speculative allegations of spoliation do not warrant sealing, and he fails to explain how sealing information about his need for discovery and taking depositions (his "legal strategy") is necessary to avoid prejudice to his case.

Discovery may not commence before defendants have answered or otherwise responded to the complaint,[1] and then only after a scheduling order has been issued by this court. *See* Local Rule 104.4 (D. Md. 2018) ("[D]iscovery shall not commence and disclosures need not be made until a scheduling order is entered.") Because a scheduling order has not been issued in this case,

---

[1] Defendants' filed a Motion to Dismiss or for Summary Judgment (ECF No. 21) with copies of Peppers' medical records after Peppers filed his Motion to Seal. Peppers requests discovery in his Opposition Response (ECF No. 23 at 2). This discovery request will be considered after Defendants file their Reply to the Opposition Response.

discovery will not begin at this time.

To the extent Peppers raises concerns about his medical records, "[t]he duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri v. General Motors Corp*., 271 F.3d 583,591 (4th Cir. 2001). To prevent spoliation of evidence, a court may impose a sanction on a party that fails to preserve evidence as required. *Hodges v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004); *Silvestri*, 271 F.3d at 590 ("The policy underlying this inherent power of the courts is the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth."). Counsel, by Peppers' filing of this case, is on notice of the need to preserve all evidence relevant to the claims presented. For these reasons, Peppers' Motion to Seal demonstrates no compelling interests that outweigh the strong presumption of public access to warrant sealing. Peppers' Motion to Seal will be denied.

In regard to Peppers' request for appointment of counsel, a federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is discretionary and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). Peppers' contention that he is unfamiliar with the law and needs counsel to help conduct discovery is insufficient to warrant appointment of counsel. No discovery will be ordered at this time, and Peppers' filings show he is able to present his claims and reply to Defendants' pleadings. Further, the claims presented are not unduly complex. The request for appointment of counsel is denied.

### 3. Defendants' Motions to Seal

Defendants filed Motions to Seal Peppers' medical records submitted in support of their

Motion to Dismiss or for Summary Judgment (ECF No. 17), and Opposition to Peppers' Motion for a TRO (ECF No. 18). They assert that sealing is necessary to avoid public disclosure of personal identifying information contained in the records, there are no apparent alternatives to protect the confidentiality and privacy of the information, and sealing will not prejudice Peppers. *Id.* The requests to seal are limited to sensitive medical records and will be granted.

### 4. Peppers' Motion for Service of Court Documents

Peppers filed a "Motion for Service on Defendants by U.S. Marshal Service Pursuant to Fed.R.Civ. P. 4 (c)(3)." ECF No. 12. Counsel has entered an appearance on behalf of Defendants and filed a Motion to Dismiss or for Summary Judgment. ECF Nos. 8, 21. An order to effectuate service is unnecessary and Peppers' Motion for Service (ECF No. 12) will therefore be denied as moot. Defendants' counsel shall clarify for the record whether service has been entered on behalf of Moubarek in both his official and individual capacities. *See* ECF No. 8 (entering appearance on behalf of Moubarek in his official capacity); ECF No. 15 ¶¶ 3, 4 (indicating efforts to obtain Moubarek's consent to represent him in his individual capacity).

### 5. Peppers' Motion for Judicial Notice

A court may take judicial notice of a fact only if it is "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). "[O]nly indisputable facts are susceptible to judicial notice." *McDermott v. Town of Forest Heights*, No. DKC-07-420, 2007 WL 9782613, at *2 (D. Md. August 1, 2007), quoting *Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 317 n.* (4th Cir. 2004). A court may take judicial notice of adjudicative facts. Adjudicative facts, as opposed to legislative facts, "are simply the facts of the particular case." Fed.R.Evid. 201(a) Advisory

Committee Notes.

In his Motion for Judicial Notice (ECF No. 13), Peppers asks the Court to take judicial notice of "facts submitted to the district court" in ten enumerated cases, which he contends corroborate his allegations. He claims the facts in these cases are "relevant evidence of a pattern of conduct by the defendants" in this action. *Id.* at 4. The Motion, however, does not state with specificity which facts are to be noticed, nor does he allege or demonstrate such facts are undisputed. The Motion will be denied.

6. Peppers' Motion for a Temporary Restraining Order and Preliminary Injunction

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Dewhurst v. Cnty. Aluminum Co.*, 649 F.3d 287, 290 (4th Cir.2011) (quoting *Winter*, 555 U.S. at 22). All four requirements must be met in order for a preliminary injunction to be granted. *See Dewhurst*, 649 F.3d at 290.

Peppers asserts that he is being denied "medically required surgery" on his left knee and pain medication to treat his knee pain in violation of his rights under the Eighth Amendment. ECF No. 6-1 at 2, 3; Peppers' Decl. ECF No. 6-2. He states that he is in excruciating pain, cannot walk without pain, and is unable to eat his meals in the dining area due to his knee injury. ECF No. 6-1 at 3; ECF 6-2 at 7–8. Peppers states that "various doctors" have recommended him for a total

left knee replacement. ECF No. 6-1 at 2; ECF No. 6-2 at 9–10. Peppers states that on August 12, 2019, Dr. Hahn, an offsite orthopedic surgeon, prescribed pain medication for him, but that he was later told there were no electronic medical records for pain medication prescribed by Dr. Hahn or that he was seen by Dr. Hahn on that day. ECF No. 6-2 at 5–6. Peppers alleges FCI-Cumberland's health service staff have not provided him with his prescribed medications and "purport to have no record of his prescribed pain medications." ECF No. 6-1 at 3. He believes that "someone is purposely destroying my medical records."[2] ECF No. 6-2 at 7.

To show irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994).

Peppers argues that he is entitled to a TRO and preliminary injunction because he is "threatened" with irreparable harm due to the extreme pain and suffering that he "is forced to endure" until the Complaint in this case is resolved. *Id*. at 6. Further, he argues the "balance of hardships" weighs in his favor. ECF No. 6-1 at 7. He asserts that his pain and suffering, combined with loss of sleep, meals, and limited mobility, which he describes as a "continuous state of being handicapped" outweigh any "hardship" of providing him surgery and pain medication prescribed for him, and notes federal inmates are provided such care on a "daily basis." ECF No. 6-1 at 7–9. He opines that he has a great likelihood of success on the merits, although he does not explain why

---

[2] The "John Doe" defendant seems to be a placeholder for the individual Peppers claims is destroying his medical records. ECF No. 14, ¶ 2.

the facts alleged are likely to provide cause for relief. ECF No. 6-1 at 9. Peppers argues granting relief comports with the law, thereby serving the public interest. *Id*. at 12.

Defendants oppose the Motion for a Temporary Restraining Order and Preliminary Injunction, and have filed a declaration and supporting exhibits. ECF No. 19. Moubarek states that he has no authority to approve total knee replacement surgery, and when he requested approval of such surgery for Peppers from the Mid-Atlantic Regional Office of the Federal Bureau of Prisons (BOP) on January 30 and September 10, 2019, surgery was denied based on BOP Clinical Practice Guidelines for evaluating and managing osteoarthritis in the knee. Moubarek Decl. ECF No. 19-2 ¶¶ 10, 11, 15. Specifically, Peppers' surgery was denied because he did not meet weight guidelines for surgery. Peppers was overweight and obesity increases risks associated with the surgery. *Id.* The Regional Office advised that the request for a TKA should be resubmitted once Peppers meets the weight criteria (a BMI less than 35). Moubarek Decl. ECF No. 19-2 ¶¶ 3, 10, 11, 21.

Further, Moubarek notes that Peppers has received continuing medical care for his bilateral knee pain, including pain medication, and Peppers has made significant progress in losing weight. Moubarek Decl. ECF No. 19-2 ¶¶ 3, 10, 11. The treatments include steroid knee injections, surgical intervention, exercise and weight loss instruction, assistive devices, and pain medication. ECF No. 19-2 ¶¶ 3, 5, 6, 8, 10, 11, 12, 13, 16, 19. On July 1, 2019, Dr. Hahn performed a right knee arthroscopy with partial medial and lateral meniscectomy. ECF No. 19-2 ¶ 17.

Moubarek states that two surgeons have recommended a left total knee arthroplasty (TKA) for Peppers.[3] On August 12, 2019, Dr. Hahn wrote after examining Peppers that he "would

---

[3] TKA is knee replacement surgery, which is more invasive than arthroscopic surgery. Moubarek Decl. ECF No. 19-2 ¶ 10 n.2; ECF No. 20 at 51.

recommend TKA in the future," after he noted that previous multiple injections and meniscectomy had "failed" and an arthroscopy would not be helpful. ECF No. 20 at 25, 26. Dr. Hahn also noted Peppers was overweight. *Id.* In 2016, Dr. Yasser Nadim recommended Peppers for a left TKA. ECF No. 6-2 ¶10; ECF 1-1 at 22.

Moubarek states that Dr. Hahn's notes from Peppers' August 12, 2019 examination contain nothing to suggest that he prescribed Peppers pain medication at that time. ECF No. 20 at 24–26. Moubark also states:

> [W]hile the BOP considers the suggestions of outside providers in determining the best care for a patient moving forward, a prescription from an outside provider is not automatically entered into the BOP system, and would need to be reviewed in accordance with BOP policy and the medications available.

ECF No. 19-2 ¶ 19. Thomas Gera, PA, who provides medical care to Peppers at FCI-Cumberland states that "based on his observations as a medical provider, [Peppers] is able to ambulate with a cane." Gera Decl. ECF No. 19-4.

Moubarek argues that Peppers should not be granted preliminary injunctive relief because he cannot show he is likely to succeed on the merits. To establish an Eighth Amendment claim a plaintiff must show that: (1) he suffered from an objectively "serious medical condition" not "timely or properly treated" and (2) prison officials acted or did not act with "deliberate indifference" to the inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). There is no dispute that Peppers has an objectively serious medical condition, but that does not end the inquiry. The subjective prong of a deliberate indifference claim requires the plaintiff demonstrate the defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Deliberate indifference "is a higher standard for culpability than mere negligence or even

civil recklessness" and, "as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Lightsey*, 775 F.3d at 178; *see also Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). In *Estelle*, the Supreme Court said that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." 429 U.S. at 106. In evaluating a prisoner's complaint regarding medical care, the Court is mindful that, "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

Defendants argue that two district courts in this Circuit have rejected Eighth Amendment claims premised on facts similar to those presented here: the denial of knee replacement surgery where an inmate was provided nonsurgical treatment and advised his weight would likely preclude surgery. *See McBee v. Wilson*, 2017 WL 3841923, *4–5 (E.D. Va. Sept. 1, 2017); *Ward v. Deboo*, 2012 WL 2359435, at *2 (N.D. W. Va. June 20, 2012), *aff'd*, 482 F. App'x 852 (4th Cir. 2012).[4] In *McBee*, Medical staff at the Federal Correctional Institution-Petersburg sent two surgery requests to the Mid-Atlantic Region, which disapproved the requests under the BOP's Clinical Guidelines because McBee was overweight. McBee claimed that the medical administrator and

---

[4] Neither case is published or binding, but each is instructive given the similarity of the facts to the matter under consideration.

clinical director at FCI-Petersburg showed deliberate indifference when they failed to ensure that he received the total knee replacement recommended by the specialist. *Id.* at *1. The court disagreed, finding on summary judgment that defendants lacked personal involvement in denying the surgery. *Id.* at * 7. The court also recognized that McBee had received substantial medical care for his knee problems, which refuted his claim of deliberate indifference. "Because a total knee replacement posed a high risk of negative side effects due to McBee's weight, such nonsurgical care was 'adequate [and] reasonable.'" *Id.* (citing *Johnson v. Doughty*, 433 F.3d 1001, 1014 (7th Cir. 2006). The court concluded that "[a]t most, McBee has alleged a disagreement with the course of treatment provided to him, which is insufficient to maintain his Eighth Amendment claim." *Id.* at *8.

In *Ward v. Deboo,* inmate Ward suffered from osteoarthritis in his left knee, which was aggravated by his weight. 2012 WL 2359435, at *1. Before he was incarcerated, a physician had discussed a knee replacement with him as a treatment option. Ward alleged in his *Bivens* complaint that since the medical care the BOP had provided did not alleviate his pain, proper treatment required surgery. *Id.* at * 2. The court held that Ward failed to allege facts sufficient to meet either the objective or subjective elements of deliberate indifference. *Id.* at *3. First, given that BOP staff provided regular and frequent non-surgical care for Ward's knee, the treatment was timely and proper. *Id*. at *2. Further, where surgery has prerequisites, proper treatment requires close monitoring and treatment of symptoms until the prerequisites are satisfied. *Id.* Where the risks of surgery outweigh any potential benefits, non-surgical treatment is reasonable and adequate. *Id*. (citation omitted).

Moubarek, has twice requested and approval was denied for Peppers to receive a TKA. Moubarek has no authority to approve the TKA request, or override the denial of the

recommendation. As in *Ward,* the Regional Office denied the surgery until the inmate's BMI meets the BOP Clinical Guidelines of less than a 35 BMI before surgery. Peppers' allegations do not demonstrate at this stage in the proceedings that it was Moubarek or "John Doe" who denied the surgery. Moreover, given the substantial medical attention Peppers has received for his knee pain, Peppers cannot show that he is likely to succeed on his claim of deliberate indifference.

Regarding Peppers' allegation that Moubarek stopped his pain medications when he arrived at FCI-Cumberland and the medication allegedly prescribed by Dr. Hahn on August 12, 2019, Moubarek counters that he advised Peppers to continue to take low dose anti-inflammatory medicine for pain relief. The record shows Peppers was prescribed Acetaminophen 325 mg. for his pain. ECF No. 19-2 ¶¶ 10, 12, 19.

In support of his claim that his medical records have been destroyed or falsified, Peppers alleges in his supplemental affidavit that "Defendant John Doe is engaged in an ongoing campaign to tamper with [his] medical records in order to deny [him] from receiving proper medical treatment." ECF No. 14, at 2; Consultation Request; ECF No. 14-1. Peppers disputes a consultation request record from October 25, 2018, which states, "[i]t should be noted right knee arthroscopic surgery was performed 2/18." ECF No. 14-1. Moubarek acknowledges the statement that right knee arthroscopic surgery was performed in February 2018 was an error. ECF No. 6-2 ¶ 19. Importantly, Moubarek states that no medical decisions were based on this clerical error. *Id.* In any event, the error pertained to Peppers' right knee – not his left knee which is at issue in this case.

Peppers also alleges John Doe fabricated the October 25, 2018, consultation request in retaliation for Peppers filing of grievances and to prevent him from obtaining medically required treatment. ECF No. 14, at 3 ¶ 4; ECF No. 14-1. He asserts that Dr. Hahn's record was falsified

to show treatment was disapproved on November 29, 2018. Review of the record, however shows not that Hahn disapproved treatment, but that on October 25, 2018, physician's assistant Gera submitted a request for BOP approval for Peppers to see Dr. Hahn for his continued pain and instability in his left knee, and BOP disapproved the request on November 29, 2018. ECF 14-1, at 1. Peppers does not specify any other medical record purportedly falsified. *See generally*, ECF 6 & 14.

Under these circumstances, Peppers does not show the likelihood of succeeding on the merits of this *Bivens* claim and cannot satisfy all elements required for preliminary injunctive relief. Peppers asks for judicial intervention in a BOP decision to determine appropriate inmate medical care. Granting preliminary injunctive relief under the facts presented here "would require the federal courts to interfere in the administration of the Federal Bureau of Prisons to manage the incarceration and medical treatment of a single inmate." *Robertson v. Samuels*, 593 Fed. Appx. 91, 93 (3d Cir. 2014) (affirming denial of motion for preliminary injunction), *cert.* denied, 135 S. Ct. 1565 (2015). Peppers has not satisfied his burden to present a clear showing that he is entitled to such relief because he does not show the likelihood of success on these claims, that the balance of the equities weighs in his favor, or that judicial intervention in his medical care would serve the public's interest.[5] Accordingly, the Motion for the TRO and Preliminary Injunction will be denied.

This case will proceed to consider Peppers' Complaint and Defendants' Motion to Dismiss or for Summary Judgment, after Defendants have filed a Reply.

A separate Order shall follow this Memorandum Opinion.


 January 17, 2020                                  /S/
Date                                    Paul W. Grimm
                                        United States District Judge

---

[5] In view of this discussion, I will not address Moubarek's qualified immunity defense at this time.