# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MAURICE PEPPERS,                      *

Plaintiff                             *

v                                     *          Civil Action No. PWG-19-2346

MOHAMED MOUBAREK,[1]                  *
JOHN DOE,
                                      *
Defendants
                                    ***

## MEMORANDUM OPINION

Self-represented Plaintiff Maurice Peppers, an inmate incarcerated at the Federal Correctional Institution in Cumberland, Maryland ("FCI Cumberland"), filed a verified complaint pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), raising claims under the Eighth Amendment, the Americans with Disabilities Act,[2] (42 U.S.C. §§ 12131 *et seq.*), the Rehabilitation Act, (29 U.S.C. §§ 794 *et seq),* and alleging that his records have been falsified. (ECF No. 1).[3]   Defendants, by their counsel, filed a Motion to Dismiss or in the Alternative, for Summary Judgment with declarations and exhibits. (ECF No. 21). Plaintiff filed a verified Response in Opposition and declaration (ECF No. 23 at 21), to which

---

[1] The docket will be amended to reflect the correct spelling of Dr. Mohamed Moubarek's first name.

[2] Plaintiff's claims under the Americans with Disabilities Act ("ADA") are not cognizable. Title II of the ADA, which prohibits disability discrimination in public services, does not apply to federal prisons. *See* 42 U.S.C. § 12131 (defining "public entity" as "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government"); *Cellular Phone Taskforce v. FCC*, 217 F.3d 72, 73 (2d Cir. 2000) (holding that the Federal Communications Commission cannot be held liable under Title II of the ADA because it does not apply to the federal government); *Phillips v. Tiona*, 508 F. App'x 737, 752 (10th Cir. 2013) (holding that "Title II of the ADA does not apply to federal prisoners in federal prisons"). The ADA claims will be dismissed for failure to state a claim.

[3] Plaintiff also filed with the Complaint a "declaration" which contains no statement verifying the truth of its contents. (ECF No. 1-1 at 8). He filed a properly verified declaration with his Response in Opposition, which is also verified. (ECF No. 23-1; ECF No. 23).

Defendants filed a Reply.  (ECF No. 26).  After considering the submissions, I find that a hearing is not necessary.  *See* Local Rule 105.6 (D. Md. 2018).  Defendants' Motion (ECF No. 21) will be granted.

## BACKGROUND

Plaintiff filed the Complaint on August 14, 2019 alleging that Dr. Mohamad Moubarek, Clinical Director at FCI Cumberland, violated his rights under the Eighth Amendment by: 1) failing to treat his chronic knee pain for over 18 months; 2), stopping pain medication prescribed by medical providers at different Bureau of Prisons ("BOP") facilities where he was housed before FCI Cumberland, (3) failing to authorize left knee replacement surgery, despite the recommendations of two surgeons; (4) failing to approve "soft" orthopedic shoes; and (5) failing to approve a wheelchair for his use. (Complaint ECF No. 1 at 6-7, 12-13 ¶¶ 13, 14, 29, 30).  He claims that two surgeons recommended a left total knee arthroplasty ("TKA").  He alleges these actions or failure to act violated the Rehabilitation Act.

Plaintiff alleges his knee pain prevents him from walking short distances.  As the pain increased, he started to miss meals due to his inability to "bear the painful walk" to the dining hall. He was also unable to access the law library, recreation center, religious services and the medical services building because of the painful exertion required to reach those locations.  (ECF No. 1 at 7 ¶ 14; Plaintiff's Memorandum, ECF No. 1-2 at 19).  Lastly, Plaintiff claims Defendant John Doe falsified and tampered with his medical record.  (ECF No. 1 at 14 ¶¶ 32).[4]

Plaintiff alleges Moubarek failed to authorize a TKA for him despite recommendations

---

[4] Plaintiff believes that Moubarek and John Doe conspired to omit parts of his medical records to prevent him from receiving adequate care. ECF No. 1-2 at 4-5. To the extent Plaintiff intends to raise a civil conspiracy claim, he must allege that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. *See Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). Plaintiff's conclusory allegation fails to state a plausible conspiracy claim.

from orthopedists that he receive surgery.   In 2019, orthopedist Dr. Joseph Hahn wrote after examining Plaintiff that he "would recommend TKA [total knee arthroplasty] in the future" for the left knee.   In 2016, Dr. Yasser Nadim had recommended a left knee TKA. (ECF No. 1 at 7-8 ¶¶ 15, 16; ECF 1-1 at 22).

On September 13, 2019, Plaintiff filed a Motion for a Temporary Restraining Order (ECF No. 9), which he later supplemented.   (ECF No. 14).   Defendants filed a Response with declarations and 177 pages of medical records.   (ECF No. 19, 20).[5]   On January 17, 2020, Plaintiff's Motion for a Temporary Restraining Order was denied.   (ECF No. 27, 28).   The declarations and records are incorporated by reference in this Memorandum Opinion and discussed as necessary to resolve the issues.

Plaintiff's medical history is significant for bilateral knee pain during the time he has been incarcerated at several different BOP facilities. (ECF No. 1 at 3 ¶ 6; Defendants' TRO Memorandum ECF No. 19, at 2-3 (summarizing treatment provided to Plaintiff at federal facilities prior to arriving at FCI-Cumberland)).[6]

On February 2, 2018, Plaintiff arrived at FCI Cumberland without a cane or walker.   He advised Health Services staff that he used a cane, needed lower bunk status, and needed bilateral TKA.   (ECF No. 1 at 1-2 ¶ 12; ECF No. 20 at 1, 132, 133, 135).

On April 4, 2018, Moubarek saw Plaintiff for complaints of bilateral knee pain and requested a TKA.   Moubarek noted that in 2016, an outside orthopedist had recommended a TKA

---

[5]  Due to confidentiality and privacy concerns the medical records are under seal.  (ECF No. 20).

[6]  In 2010, an orthopedist injected Plaintiff's left knee.  (Moubarek Decl., ECF No. 19-2 at 3 ¶4).  In 2011, Plaintiff underwent a left knee arthroscopy.  (Id.; ECF No. 1-1, pp. 33-34).  Arthroscopy is a minimally invasive surgery to repair a joint or bone problem.  (ECF No. 19-2 at 3 n. 1).  Plaintiff had a steroid injection in his left knee in June, 2014.  (Id. at 3 ¶5).  In August 2014, Plaintiff underwent arthroscopy with partial medial meniscectomy on his right knee.  (Id. at 4 ¶ 7).  He received injections in the right and left gluteal regions for his bilateral knee pain in August 2015.  (Id. at 4 ¶8).  When Plaintiff arrived at FCI Cumberland he had not undergone a total knee replacement (TKA).

for Plaintiff. (ECF No. 19-2 at 4 ¶ 10; ECF 20 at 120). Moubarek observed Plaintiff's knees were unstable and he needed an assistive device for walking. (*Id.*). Moubarek also observed that Plaintiff's weight was 285 lbs., putting him in a category of obese. (ECF No. 20 at 121, 124, 141). By October 25, 2020, Plaintiff weighed 318 lbs. (*Id.* at 141). Moubarek recommended Plaintiff use a cane, perform strengthening exercises, take prescription low dose, anti-inflammatory medicine for his pain (Ibuprofen 200 mg), and lose weight because BOP policy requires a prisoner have a BMI (body mass index) of less than 35 to be considered for a TKA. (ECF No. 19-2 at 4 ¶¶ 10, 11; ECF 20 at 122). BOP policy provides:

> Even modest amounts of weight loss may slow progression of the disease, reduce pain, and improve the functional status of the patient. In the case of surgical patients, obesity increases the risk for post-operative infection and venous thromboembolism/pulmonary embolism, as well as makes surgery technically more difficult.

(ECF No. 19-2 at 4 ¶ 11, quoting BOP Clinical Practice Guidelines, *Evaluation and Management of Osteoarthritis of the Hip and Knee* ECF No. 19-2, Attachment B, p. 19). Moubarek noted the Clinical Practice Guidelines were being followed and ordered laboratory tests. *Id.*

Thomas Gera, P.A., Plaintiff's primary care provider, met with him on April 4, 2018. Gera noted that Plaintiff was obese, had bilateral knee crepitus, moderate knee swelling without increased warmth, and functional range of motion at full extension to 90 degrees flexion. (ECF No. 19-2 at 5 ¶12: ECF 20 at 125. Gera prescribed 200 mg of Ibuprofen for pain relief. (ECF No. 20 at 126).

On September 24, 2018, Dr Hahn gave Plaintiff a steroid injection in his right knee. (ECF No. 19-2 at 6 ¶ 13; ECF No. 20 at 99-103). On October 25, 2018, Gera reviewed Hahn's treatment plan with Plaintiff, noting Plaintiff had shown no real improvement after the right knee injection. (ECF No. 19-2 at 6 ¶ 14; ECF No. 14-1; ECF No. 20 at 93). The medical note from that visit

inaccurately indicated that Plaintiff had right knee arthroscopic surgery in February 2018. (ECF No. 19-2 at 6 ¶ 14; ECF No. 20 at 94). Moubarek states the notation was "administrative error" on which he based no medical decision. (ECF No. 19-2 at 6 ¶ 14).

On October 25, and December 11, 2018, Plaintiff requested "soft" orthopedic shoes based on a prior orthopedist's recommendation. (ECF No. 20 at 88-89, 94-95). Gera reviewed the request with Moubarek since Plaintiff did not have diabetic neuropathy or severe foot deformity, there were no medical indications for soft shoes. (Id.). Moubarek did not approve soft shoes based on his medical evaluation, because the orthopedist had provided no reason why Plaintiff needed the soft shoes, and advised losing weight would better benefit his knee than soft shoes. Plaintiff's bottom bunk pass was continued because Plaintiff's BMI was over 40. (ECF No. 20 at 88-89).

On January 28, 2019, Gera submitted a consultation request to approve joint replacement surgery [TKA] for Plaintiff's left knee, referencing Hahn's recommendation. (ECF No. 20 at 75; ECF No. 1-1 at 22, 28; ECF No. 19-2 at 6 ¶ 15). The request also indicated that Plaintiff's BMI of 42 did not meet BOP guidelines. (ECF No. 19-2 at 7 ¶ 15; ECF No. 20 at 75). Gera assessed the priority for the surgery request as "routine," and the level of care as "medically necessary, non-emergent." (ECF No. 20 at 75).

On January 30, 2019, Moubarek referred the consultation request for a TKA to the BOP's Utilization Review Committee (URC). The URC referred the request to the Mid-Atlantic Regional Office the next day. The Regional Office disapproved the request on February 7, 2019, because Plaintiff's BMI was over 35, which did not meet BOP criteria for joint replacement. (ECF No. 20 at 77).

On May 6, 2019, Hahn injected Plaintiff's left knee with a steroid to alleviate the pain and recommended right knee arthroscopy. (ECF No. 1 at 7 ¶ 15; ECF No. 19-2 at 7 ¶ 16; ECF No. 20

at 64-66).

On May 9, 2019, Plaintiff complained to Gera of left knee pain and swelling which he associated with the injection. Plaintiff also reported that he had improved his diet. Gera ordered lab tests for Plaintiff's left knee. (ECF No. 19-2 at 7 ¶ 16; ECF No. 20 at 60-61).

On May 14, 2019, Gera requested BOP approval for a right knee arthroscopy for Plaintiff as Hahn had recommended, because Plaintiff's right knee pain continued even after the September 2018 steroid injection. (ECF No. 20 at 7 ¶17).

On July 1, 2019, Dr. Hahn performed a knee arthroscopy with partial medial and lateral meniscectomy on Plaintiff's right knee. (ECF No. 19-2 at 7 ¶ 17; ECF No. 20 at 35-40, 58-59).

On July 5, 2019, Gera requested approval for Plaintiff to see Hahn for a flare up of left knee pain. ECF No. 19-2 at 7-8 ¶ 18. Gera noted that the left knee injection had aggravated the knee. Plaintiff walked with a single cane and weighed 299 pounds. *Id*; ECF No. 20 at 32-33.

On July 22 and August 12, 2019, Hahn met with Plaintiff. Hahn advised that he did not believe arthroscopy surgery on Plaintiff's left knee would be beneficial since Plaintiff had failed multiple injections and had a prior meniscectomy. (ECF No. 20 at 25, 26, 30; ECF No. 19-2 at 8 ¶19). In the medical notes for the July 22, 2019 visit, Hahn wrote that he would recommend TKA in the future and noted that Plaintiff is a candidate for TKA. The notes do not indicate pain medication was prescribed at this visit. (ECF No. 19-2 at 8 ¶ 19; ECF No 20 at 29-31, 25-27). Moubarek explains the BOP considers the suggestions of outside medical providers in determining best care for a patient, and "a prescription from an outside provider is not automatically entered in the BOP system, and would need to be reviewed in accordance with BOP policy" and available medication. (ECF No. 19-2 at 8 ¶ 20). Plaintiff states that when he questioned Hahn about losing weight before knee surgery, Hahn replied the surgery could be performed on plaintiff without any

weight loss.  (ECF No. 1 at 9-10 ¶ 21).

On August 27, 2019, Gera requested approval for Plaintiff to see Hahn for increased left knee pain.  (ECF No. 19-2 at 9 ¶20).  On September 6, 2019, Gera noted that while Plaintiff's BMI was not yet below 35, he had made significant progress losing weight. Gera observed that Plaintiff walked with a cane.  (ECF No. 20 at 13-15, 21).

On September 6, 2019, Gera submitted a second knee surgery request for Plaintiff.  (ECF No. 19-2 at 8 ¶ 20; ECF No. 20 at 14, 16-18).

On September 10, 2019, Moubarek referred the second request for left knee surgery to the URC.  The URC referred the request to the Mid-Atlantic Regional Office the following day.  The Regional Office denied the request on September 17, 2019, because Plaintiff did not meet BOP criteria of less than 35 BMI.  The Regional Office advised that the request be re-submitted once Plaintiff's BMI was under 35.  (ECF No. 19-2 at 9 ¶ 21; ECF No. 20 at 18).

Moubarek attests Plaintiff's condition will be monitored and he will be reconsidered for a TKA when he meets BOP requirements.  Moubarek opines that based on Plaintiff's medical condition he should be able to walk with a cane and does not require other assistive devices.  (ECF No. 19-2 at 9 ¶ 27).

## STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint for "failure to state a claim upon which relief can be granted."  This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Specifically, a plaintiff must establish "facial

plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The court need not accept unsupported legal allegations, *see Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). Well-pleaded facts as alleged in the complaint are accepted as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). Factual allegations must be construed "in the light most favorable to [the] plaintiff." *Adcock v. Freightliner LLC*, 550 F.3d 369, 374 (4th Cir. 2008) (quoting *Battlefield Builders, Inc. v. Swango*, 743 F.2d 1060, 1062 (4th Cir. 1984)).

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322-23. On those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure

when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.,* the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

In this inquiry, a court must view the facts and the reasonable inferences drawn "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio* Corp., 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold*, Inc., 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005).  The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson,* 477 U.S. at 252.  This court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citation omitted).

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours & Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448–49 (4th Cir. 2012).  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods*

*Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv.* Co., 80 F.3d 954, 961 (4th Cir. 1996)).  To raise adequately the issue that discovery is needed, the non-movant  typically must file an affidavit or declaration pursuant to Rule 56(d) explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  Fed. R. Civ. P. 56.  Courts place greater weight on the need for discovery "when the relevant facts are exclusively in the control of the opposing party," such as "complex factual questions about intent and motive."  *Harrods,* 302 F.3d at 244. (quoting 10B Wright, Miller & Kane, Federal Practice & Procedure § 2741, at 419 (3d ed. 1998)) (internal quotation marks omitted).

## Plaintiff's Discovery Request

Plaintiff seeks discovery of information he asserts is material to opposing Defendants' Motion for Summary Judgment.  ECF No. 23 at 3, 23-1.  Defendants oppose the request in their Reply.  (ECF No. 26).  Plaintiff asserts he needs discovery "to submit the actual documents to the Court evidencing" exhaustion of "all my administrative remedies as to all claims" and because the medical records in evidence do not reflect "his entire weight history" and "at times" his BMI conformed to BOP joint replacement guideline.  (ECF No. 23-1 at 3; ECF No. 23 at 6-7, 15).  Specifically, he requests "all of his grievances" submitted to the BOP to evidence that he has exhausted his administrative remedies, depositions or interrogatories from Carolyn Vines Sapna, EEO Director for the BOP and Ian Conners, National Inmate Appeals Administrator, declarations from the outside orthopedists who evaluated him, declarations from the health providers from all prisons where he was previously housed, "all email records submitted to Health Services" and asks to submit interrogatories to medical providers and BOP employees.  (ECF No. 23 at 5-6, 15; ECF No. 23-1 at 8, 9).

Plaintiff has been provided a summary of all his formal BOP grievances (ECF No. 21-2 at 2-98) and all his medical records from April 2, 2018 when he was transferred to FCI Cumberland, though January 23, 2019 (ECF No. 23-2 at 9).  He does not identify the particular grievance documents or information material he is seeking that is material to his opposition.  Instead, he appears to argue the records provided to him are unreliable.  Plaintiff conflates documentation error in his medical record with tampering by a John Doe defendant, and contends he needs copies of his administrative grievances to oppose the "false" declaration of BOP Legal Assistant Howard Williams.  (ECF No. 23-1 at 2, 10 Williams Dec. ECF No. 21-2 at 6 ¶11).[7]  In that declaration, Williams stated Plaintiff filed no administrative remedies related to the tampering with medical records claim.  Defendants subsequently conceded the record tampering claim, which is listed on the grievance summary provided to Plaintiff, was exhausted.  (ECF 21-2, at 46, Remedy 965095-A1; ECF 23-1 at 3; ECF No. 26 at 3).  This single episode, however, fails to suggest the grievance information provided by Defendants is unreliable or that the sweeping array of discovery sought is material to Plaintiff's opposition.  While Mr. Williams may have missed Plaintiff's administrative grievance for record tampering, this deficiency was cured in the grievance summary provided to Plaintiff.

Regarding exhaustion of the Rehabilitation Act claims, Plaintiff contends Defendants rely on the "untruthful" declaration of EEO Officer Carolyn Vines Sapla, in which she states that as of October 31, 2019, Plaintiff had filed no complaints with her office or with the Director for EEO. (ECF No. 23 at 5; ECF No. 21-3 at 3 ¶ 7).  Plaintiff counters that he submitted two complaints to

---

[7] In a December 3, 2018 informal resolution request, Plaintiff informed FCI Cumberland staff that his medical record inaccurately showed that he had surgery in February 2018, prior to his transfer to FCI Cumberland and requested to see Dr. Hahn for knee pain.  (ECF No. 23-2, at 3).  FCI Cumberland staff responded that the reference to the February 2018 surgery in the medical record was a documentation error.  Plaintiff then asserted "I now fear my medical records are being altered and/or tailored." *Id.*, at 6-7  BOP records show that Plaintiff appealed this concern to the Central Office, and Defendants acknowledge the claim is exhausted. (ECF 21-2, at 46, Remedy 965095-A1; ECF No. 23-1 at 3).

the EEO Officer to exhaust his Rehabilitation Act claims, identifying his first "complaint" as undated correspondence directed to "Equal Opportunity Employment Specialist," requesting review of his "complaint." (ECF 23-1 at 4-5, 10-11 ¶¶ 13m 14; ECF 23-3 at 2). The letter is date stamped as received November 4, 2019, by the "Administrative Remedy Section, Federal Bureau of Prisons." (ECF No. 23-3 at 2). Plaintiff does not show that he filed the letter with the EEO Director, as required for exhaustion by 28 C.F.R. § 39.170. As to the purported second complaint, Plaintiff does not provide the complaint, describe its contents, or state the date of its submission. Rather, he alleges without supporting facts that he submitted a second Rehabilitation Act Complaint to the EEO Office, but it was never filed by staff. (ECF No. 23-1 at 12). Further, even if the letter were timely filed with the EEO Director, the letter and its attachments does not concern the Rehabilitation Act claims alleged in this case or mention Dr. Moubarek or the John Doe defendant. (ECF No. 1 at 2, 13, 15; ECF No. 1-2 at 20-23).[8] As such, the discovery Plaintiff seeks is irrelevant to his opposition to Defendants' Motion.

Plaintiff also seeks declarations from Officers Bonner, May, Edmunds, and Hamilton-Rumer. (ECF No 23 at 12-13, 20). Plaintiff alleges Bonner can confirm Dr. Hahn wrote a prescription for him on August 12, 2019. Plaintiff does not describe what information the other officers "could" provide relevant to his claims. (ECF No. 23 at 11-13, 19-20). With their Reply, Defendants filed Officer Bonner's declaration. Bonner affirms that he would not have been involved in processing or handling medical prescriptions, did not handle any medical prescriptions for Plaintiff, and has no knowledge of medication prescribed for Plaintiff by Hahn. (Declaration

---

[8]  The letter attaches past grievances Plaintiff filed with the BOP about events that allegedly occurred at FCI Hazelton from December 2017 to March 2018, prior to his transfer to FCI Cumberland. (ECF No. 23-3 at 2-42). The grievances allege name calling and misconduct by FCI Hazelton staff, missed meals, food tampering, foot calluses, requests for law library and recreation at Hazelton, and use a walker or cane while in the Special Housing Unit. (ECF No. 23-3 at 4-42).

of Steven Bonner, ECF No. 26-1 at 3 ¶¶ 3-4. (*Id*. at 3 ¶3).

Plaintiff also requests his complete medical history and all email records submitted to Health Services, which he alleges will show why orthopedists dating back to 2004 recommended soft shoes for him, including Dr. Thorpe in 2014. ECF No. 23 at 13-19. Plaintiff filed Dr. Thorpe's recommendation with the Complaint. (ECF No. 1-1 at 11). Plaintiff does not elaborate how this summary and outdated recommendation is material to his claim.

Lastly, Plaintiff seeks his complete medical record to show that "at times" unspecified his BMI was under 35, and wants to submit interrogatories to Health providers and BOP employees who did not recommend a TKA for him. As indicated, Plaintiff has received a complete copy of his medical record for the relevant time period. Further, Plaintiff fails to explain why discovery from those who did not recommend surgery, many of whom may not be authorized to request the surgery, is material to his opposition.

Courts tend to deny Rule 56(d) requests grounded in speculation or amounting to a "fishing expedition." *Gardner v. United States*, 184 F. Supp. 3d. 175, 185 (D. Md. 2016) (denying request because plaintiff expressed mere hope that discovery would yield evidence to establish claim). Plaintiff's conjectural arguments for a vast amount of discovery are speculative, contrary to the facts, and do not demonstrate the information sought is material to his opposition. The discovery requested does not create a genuine issue of material fact to defeat summary judgment and is not essential to opposing Defendants' Motion. Accordingly, I am satisfied that it is appropriate to evaluate Defendants' motion as one for summary judgment without the need to order the discovery requested.

## **DISCUSSION**

Defendants argue Plaintiff's *Bivens* claims for denial of medications and a wheelchair

should be dismissed for failure to exhaust administrative remedies.  (ECF No. 21 at 1; ECF No. 26 at 2).[9]  They assert that Moubarek did not deny Plaintiff surgery; rather he twice requested approval for surgery from the Mid-Atlantic Regional Office, which rejected the requests under BOP guidelines because Plaintiff is overweight.[10]  Defendants assert Plaintiff's Rehabilitation Act claims, except for the record tampering, are unexhausted[11] and should be dismissed.  Defendants argue Plaintiff fails to state a plausible claim for relief that his condition requires a wheelchair, soft shoes, or that John Doe falsified his medical records.

### Administrative Exhaustion

### *Bivens* Claims

If a prisoner's claims have not been properly presented through the administrative remedy procedure, they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.  *Ross v. Blake*, 136 S.Ct. 1850, 1856-57 (2016) (exhaustion is mandatory); *Porter v. Nussle,* 534 U.S. 516, 524 (2002) (exhaustion is prerequisite to suit); *Gibbs v. Bureau of Prison Office*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (inmates must exhaust *Bivens* claims).  Plaintiff does not allege in the BOP administrative process was unavailable to him.

The BOP has established a four-level administrative remedy process for inmates to resolve

---

[9]  Plaintiff exhausted claims for soft orthopedic shoes and for a knee replacement. (Williams Decl. ECF No. 21-2 at 5-6 ¶¶9, 21-24).

[10]  To the extent Plaintiff introduces a new claim through his opposition that the BOP's policy of requiring a BMI under 35 for joint surgery is unconstitutional, he may not do so.  *See Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (stating that "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss" (citation omitted)); *see also Zachair Ltd. v Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint" (citations omitted)), aff'd 141 F.3d 1162 (4th Cir. 1998). Similarly, Plaintiff's related request for an expert to evaluate the constitutionality of the BOP's policy and the medical care provided to obese nonincarcerated individuals will not be considered here.

[11]  Defendants initially argued the falsification of records claim was unexhausted.  In the Reply to Plaintiff's Response in opposition to the Defendants' Motion, Defendants acknowledged Plaintiff's falsification and tampering with records claim is exhausted and asserted the claim should be dismissed for lack of merit.  (ECF No. 26 at 2-3).

concerns related to their confinement. *See* 28 C.F.R. § 542.10 *et seq*. Inmates must first attempt informal resolution with staff. *See* 28 C.F.R. § 542.13. If an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper form within twenty calendar days of the date of the occurrence on which the complaint is based. *See* 28 C.F.R. §542.14(a). If an inmate is dissatisfied with the Warden's response to the formal complaint, he may appeal, using the appropriate form, to the Regional Director within twenty calendar days of the Warden's response. *See* 28 C.F.R. § 542.15(a). If still dissatisfied, the inmate may appeal the Regional Director's response to the Office of the General Counsel, located in the BOP Central Office in Washington, D.C., using the appropriate form. The inmate must file this final appeal within thirty calendar days of the date the Regional Director signed the response. *See id.* An inmate has not exhausted his administrative remedies until he has pursued his grievance through all levels. *See* 28 C.F.R. § 542.15(a).

In regard to the denial of medication claim, Defendants' records show that Plaintiff filed administrative grievances 938203 ("medication unjustly continued") and 977126 ("denied medications") concerning denial of medications. (Declaration of Howard Williams, ECF No. 21-2 at 5 ¶¶ 7, 8; ECF No. 21-2 at 36, 48). Plaintiff exhausted grievance 938203 at the institutional (FCI Cumberland) level, but he did not appeal the denial of the claim to the Regional and Central Offices. Plaintiff filed administrative grievance 977126 at the institutional and regional levels, but he did not pursue appeal of the denials to the BOP's General Counsel in the Central Office. In his opposition to Defendants' Motion, Plaintiff argues 977126 is "wholly irrelevant" to his claims for denial of pain medication. (ECF No. 23 at 2-3). Plaintiff does not explain why administrative grievance 977126 is irrelevant to determining whether his claims were exhausted or provide facts to dispute Defendants' verified exhibits. Defendants' Motion is granted as to these claims. The

claims are dismissed without prejudice for lack of exhaustion.

Plaintiff filed no administrative grievances about his need for a wheelchair. Williams Decl. ECF No. 21-2 at 6 ¶ 11; SENTRY Administrative Remedy Generalized Retrieval, (reflecting all formal BOP administrative grievances filed by Plaintiff), ECF No. 21-2 at 2 ¶6; ECF No. 21-2 at 18-49. Plaintiff's conclusory assertions in his declaration to the contrary are unsupported by any specific evidence regarding his efforts to address the denial of a wheelchair through the administrative process. Defendants are entitled to summary judgment as to this claim as a matter of law. Viewing the evidence in the light most favorable to Plaintiff, the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and drawing all reasonable inferences in his favor, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)). In the absence of specific facts showing that there is a genuine issue of material fact in dispute, Defendants' Motion will be granted as to this claim. The wheelchair claim will be dismissed without prejudice.

### Rehabilitation Act Claims

The Rehabilitation Act prohibits discrimination on the basis of disability by any recipient of federal funding or under any program or activity conducted by any Executive Branch agency of the federal government. 29 U.S.C. § 794. "Although the United States Court of Appeals for the Fourth Circuit has yet to rule on the precise issue of whether the exhaustion requirement of the PLRA applies to claims brought under the Rehabilitation Act, all circuits to do so have held that it does." *Gambino v. Hershberger*, No. TDC-17-1701, 2019 WL 1300856, at *10 (D. Md. Mar. 20, 2019) (citations omitted); *see also Harding v. Green*, No. JFM-11-1561, 2012 WL 1203956, at *2 (D. Md. Apr. 9, 2012) (holding that "exhaustion under the PLRA is required for . . . claims under

the Rehabilitation Act"). Exhaustion under the Rehabilitation Act requires a federal prisoner first exhaust the BOP administrative remedy process and after that process has been completed, to submit a complaint to the Director for Equal Employment Opportunity. *Id.* (citing 28 C.F.R. § 39.170(d)). Inmates complaining of discrimination on the basis of handicap in programs or activities conducted by the Department of Justice shall file a complaint with the Director for EEO within 180 days of the BOP's final administrative decision. *Id.* Exhaustion may be excused if the administrative procedure is not available. *Gambino,* 2019 WL 1300856, at *10.

Plaintiff alleges that Moubarek's failure to provide him with a wheelchair, TKA surgery, medicine prescribed by providers at other BOP institutions, and soft shoes violates the Rehabilitation Act. (ECF No. 1 at 2, 13, 15). Plaintiff asserts that denial of a wheelchair effectively denied him meaningful access to prison services including the dining hall, law library, recreation center, medical services building and religious services building, because he is only able to access these places through painful exertion. (ECF No. 1-2, at 20-23).

Defendants assert that Plaintiff did not exhaust all four tiers of the BOP administrative review process and then file a complaint with the EEO Director. (Williams Decl. ECF No. 21-2 at 5-6  ¶¶ 7, 8, 11; Declaration of Carolyn Vines Sapla**,** ECF No. 21-3- at 4 ¶ 7). As discussed above, the EEO "complaint" Plaintiff filed did not address these claims, nor mention Dr. Moubarek. Further, Plaintiff provided no specific information about the purported second "complaint" he filed sufficient to create a genuine issue of material dispute as to exhaustion to defeat the motion for summary judgment. Accordingly, I find the Rehabilitation Act claims unexhausted. Defendant's Motion will be granted and the Rehabilitation Act claims dismissed without prejudice as unexhausted.

### Exhausted Eighth Amendment Claims

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). An inmate must demonstrate that: (1) objectively, he was suffering from a serious medical need; and (2) subjectively, the defendants were aware of his need for medical attention but failed to either provide it or ensure that it was available. *See Farmer* v. *Brennan*, 511 U.S. 825, 834–837 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017). A medical condition is serious when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

To satisfy the subjective component, a plaintiff must show defendants acted with "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839, 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce,* 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach* Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farme*r, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Delay in medical treatment may amount to deliberate

indifference. *Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009) (citing *Estelle*, 429 U.S. at 104-05. "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) (quoting *Bowring v. Godwin*, 551 F.2d 44, 47–48 (4th Cir. 1977)).

Plaintiff claims Dr. Moubarek violated his Eighth Amendment rights by failing to approve knee replacement surgery and ordering soft orthopedic shoes. Plaintiff does not dispute that Moubarek twice referred him for surgical approval, although the requests ultimately were rejected by the Mid-Atlantic Regional Office. Plaintiff's claim is directly refuted by the uncontroverted facts. Moubarek did not approve soft shoes because they were not medically indicated. Plaintiff's disagreement with this decision does not support a claim of constitutional consequence. Moreover, during the time period at issue, Plaintiff was provided a cane, analgesics, steroid injections, visits with an outside orthopedist (Dr. Hahn), a knee arthroscopy with partial medial and lateral meniscectomy, and advised to lose weight so that the request for TKA surgery could be resubmitted. Under these circumstances, Plaintiff fails to show that Moubarek acted with deliberate indifference to his serious needs both in regard to the exhausted and unexhausted *Bivens* claims in the Complaint. Summary judgment will be entered in favor of Defendants as to the knee replacement and soft shoe claims.

### Records Claim

Lastly, Plaintiff alleges that John Doe acted with deliberate indifference to his serious medical needs by switching "portions" of his electronic medical records which resulted in the

denial of treatment by an orthopedist for months due to the "erroneous" records.  (ECF No. 1 at 14 ¶ 32; ECF No. 23-1 at 16-17 ¶ 1).

Plaintiff states that Hamilton's April 9, 2018 response to his informal attempt at resolution for soft shoes, "led" him "to believe that my medical records were altered."  (ECF No. 1-1 at ¶ 13).  In the Response, J. Hamilton-Rumer, HSA said that there was no current indication of a need to see an orthopedic doctor, his knee replacement was on hold pending Plaintiff's weight loss, and there was no indication of a need for a soft shoe pass pursuant to an exam performed on April 4, 2018 (FCI Cumberland intake exam).  (*Id*.; ECF No. 1-1 at 30).  Plaintiff provides no explanation why he believes this response suggested improper alteration of his medical records, and none is apparent.

Plaintiff asserts that Moubarek and "Nurse Hamilton" showed Plaintiff another inmate's records, said they were his, and at some point claimed that "someone" switched his record in the computer.  (ECF No. 1 at 8-9  ¶¶ 18, 19).  On November 30, 2018, Plaintiff filed an attempt at formal resolution regarding the inaccurate statement on his record that he had right knee surgery on February 2, 2018 at FCI Hazelton.  (ECF No. 23-1 at 17 ¶ 22; ECF No. 23-2 at 3, 4, 6-9).  On April 6, 2019, the Acting Warden responded:

> A review of this matter reveals that you were seen by the Orthopedist on September 24, 2018.  At that time you received a steroid injection to the right knee.  A follow-up orthopedic consult request was submitted in October 2018.  However, there was a documentation error in the consult resulting in denial of the consult.  The consult was resubmitted on December 6, 2018, when staff became aware of the error.

(ECF No. 23-2 at 9).

Even when Plaintiff's allegation of improper alteration of his record is viewed in conjunction with the documentation error regarding the inaccurate notation about surgery in 2018 at another facility, Plaintiff's allegations, even if true, fail to suggest an unnamed John Doe BOP

20

employee deliberately and improperly tampered with Plaintiff's medical records or that it resulted in harm to him.  Plaintiff fails to allege what alteration was made in his record, how it was made with intentional disregard to his safety and serious medical needs, and how the action resulted in serious injury to him.  Negligence is insufficient to premise an Eighth Amendment claim.  *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975).  Moreover, Dr. Moubarek affirms that no decisions were made based on the documentation error, the only specific incident Plaintiff identifies in support of this claim.  Plaintiff does not dispute that FCI Cumberland submitted a new consultation with Dr. Hahn on January 28 and March 15, 2019, and that he was seen by him on May 6, July 1, July 22, and August 12, 2019. ECF  No. 20  64-66, 39-40, 29-30, 78, 75, 73-74).  Under these circumstances, there is no genuine dispute of material fact to support an Eighth Amendment claim of deliberate indifference.  Defendants are entitled to summary judgment in their favor as a matter of law.

## CONCLUSION

For the reasons stated in this Memorandum Opinion, Defendants' Motion for to Dismiss or in the Alternative for  Summary Judgment will be granted.  A separate Order follows.


9/25/2020_____                                   _____/s/_____
Date                                                                      Paul W. Grimm
                                                                              United States District Judge